UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE COMMISSION,

                                                Plaintiff,

                        -against-

JEFFREY GOLDMAN and CHRISTOPHER
EIKENBERRY,

                                                Defendants.

No. 18 Civ. 13550-KM-JBC

[PROPOSED] JUDGMENT

AS TO DEFENDANT

JEFFREY GOLDMAN

The Securities and Exchange Commission having filed a Complaint and Defendant

Jeffrey Goldman ("Defendant") having entered a general appearance; consented to the Court's

jurisdiction over Defendant and the subject matter of this action; consented to entry of this

Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from

this Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933

(the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any

means or instruments of transportation or communication in interstate commerce or by use of the

mails, directly or indirectly:

      (a)      to employ any device, scheme, or artifice to defraud;

      (b)      to obtain money or property by means of any untrue statement of a material fact

                  or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

2

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)], by making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, securities (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)], and without complying with any exemptions promulgated pursuant to Section 15(a)(2) of the Exchange Act [15 U.S.C. § 78o(a)(2)].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code [11 U.S.C. § 523], the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code [11 U.S.C. § 523 (a)(19)].

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

## VIII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: _Jan 23, 2020_

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | No. 18 Civ. 13550-KM-JBC |
| -against- | |
| JEFFREY GOLDMAN and CHRISTOPHER EIKENBERRY, | CONSENT OF DEFENDANT JEFFREY GOLDMAN |
| Defendants. | |

1.      Defendant Jeffrey Goldman ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *United States v. Goldman*, Crim. No. 18-cr-00516-MCA (D.N.J.), Defendant pleaded guilty to conspiracy to commit securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, in violation of 18 U.S.C. § 371. In connection with that plea, Defendant admitted the facts set out in the transcript of his allocution that is attached as Exhibit A to this Consent. Defendant's guilty plea was entered pursuant to a plea agreement that is attached as Exhibit B to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Goldman*.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things, permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities

Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Sections 10(b) and 15(a)(1) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78o(a)(1)] and Rule

10b-5 thereunder [17 C.F.R. § 240.10b-5].

4.      Defendant agrees that the Court shall order disgorgement of ill-gotten gains,

prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act

[15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

Defendant further agrees that the amounts of the disgorgement and civil penalty shall be

determined by the Court upon motion of the Commission, and that prejudgment interest shall be

calculated based on the rate of interest used by the Internal Revenue Service for the

underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Defendant further

agrees that in connection with the Commission's motion for disgorgement and/or civil penalties,

and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he

did not violate the federal securities laws as alleged in the complaint; (b) Defendant may not

challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such

motion, the allegations of the complaint shall be accepted as and deemed true by the Court; and

(d) the Court may determine the issues raised in the motion on the basis of affidavits,

declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence,

without regard to the standards for summary judgment contained in Rule 56(c) of the Federal

Rules of Civil Procedure.  In connection with the Commission's motion for disgorgement and/or

civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

11.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal

3

or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order,

consent order, decree or settlement agreement entered in connection with this proceeding, is a

debt for the violation by Defendant of the federal securities laws or any regulation or order

issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §

523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to

vacate the Judgment and restore this action to its active docket.  Nothing in this paragraph affects

Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation

or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the

Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to

seek from the United States, or any agency, or any official of the United States acting in his or

her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees,

expenses, or costs expended by Defendant to defend against this action.  For these purposes,

Defendant agrees that Defendant is not the prevailing party in this action since the parties have

reached a good faith settlement.

14.     In connection with this action and any related judicial or administrative

proceeding or investigation commenced by the Commission or to which the Commission is a

party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and

places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile

transmission of notices or subpoenas issued by the Commission for documents or testimony at

depositions, hearings, or trials, or in connection with any related investigation by Commission

staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices

and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on

service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local

rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

15.     Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the judgment is entered.

16.     Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

17.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated: _January 17, 2020_     _____
                              Jeffrey Goldman

On _January 17_, 2019, Jeffrey Goldman, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

BRIAN HOMESZYN
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Oct 11, 2026
ACTING IN COUNTY OF _Oakland_

Notary Public
Commission expires:

Approved as to form:

_____
Matthew E. Beck, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
Attorney for Defendant

6

EXHIBIT A

1

1        IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF NEW JERSEY

3

4   UNITED STATES OF AMERICA      :      Criminal No.
                                         18-cr-516-MCA
5                 v.              :
                                         TRANSCRIPT OF
6   JEFFREY E. GOLDMAN,           :       GUILTY PLEA

7               Defendant.   :
    ------------------------------x

8

9

10                                    Martin Luther King Courthouse
                                      50 Walnut Street
11                                    Newark, New Jersey 07102
                                      November 6, 2019
12

13

14   BEFORE:

15        THE HON. MADELINE COX ARLEO, U.S.D.J.

16

17

18

19

20                                    Reported by:
21                                    CHARLES P. McGUIRE, C.C.R.
                                      Official Court Reporter
22

23

24   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription.
25

2

1    APPEARANCES:

2         ARI B. FONTECCHIO, Assistant United States Attorney
          970 Broad Street
3         Newark, New Jersey 07102
          On behalf of the Government
4
          CHIESA SHAHINIAN & GIANTOMASI
5         One Boland Drive
          West Orange, New Jersey 07052
6         BY: MATTHEW E. BECK, ESQ.
          On Behalf of the Defendant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1        (Defendant present)

2              THE COURT CLERK:  All rise.

3              THE COURT:  All right.  Good afternoon, everyone.

4              MR. FONTECCHIO:  Good afternoon, Your Honor.

5              THE COURT:  All right.  We're here in

6  United States of America v. Jeffrey Goldman.

7              Could I have appearances, please?

8              MR. FONTECCHIO:  Good afternoon, Your Honor.

9              Assistant U. S. Attorney Ari Fontecchio for the

10  Government.

11              THE COURT:  All right.

12              MR. BECK:  And good afternoon, Your Honor.

13              Matthew Beck from the law firm of CSG, and with me

14  at counsel table is my client, Jeffrey Goldman.

15              THE COURT:  All right.  So, we're here for a plea

16  for Mr. Goldman.

17              We're going to begin by asking Amy to administer

18  the oath to Mr. Goldman.

19              Mr. Goldman, do you swear or do you affirm?

20              One is with and one is without a bible.

21              THE DEFENDANT:  I swear.

22              THE COURT CLERK:  All right.  If you can raise

23  your right hand, place your left hand on the bible, please.

24  J E F F R E Y   E R I C   G O L D M A N, the Defendant, was

25  duly sworn.

4

1          THE COURT CLERK:  Please state your full name for

2     the record.

3          THE DEFENDANT:  Jeffrey Eric Goldman.

4          THE COURT:  Mr. Goldman, good afternoon.

5          THE DEFENDANT:  Good afternoon, Your Honor.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  Fifty-three years old.

8          THE COURT:  And how far did you go in school?

9          THE DEFENDANT:  How far?

10          THE COURT:  How far.

11          THE DEFENDANT:  I have a graduate degree.

12          THE COURT:  So you have no problem with the

13     English language at all; correct?

14          THE DEFENDANT:  Correct.

15          THE COURT:  Okay.  So, have you had any drugs,

16     including medicine, within the last 24 hours?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Have you had any alcohol within the

19     last 12 hours?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  And your oath obligates you to give me

22     truthful answers.  If you don't know the answer to

23     something, just let me know.  I'm happy to rephrase it.

24          Have you ever been treated for mental illness of

25     any kind?

5

1      THE DEFENDANT:  No, Your Honor.

2      THE COURT:  Okay.  Ever been treated for drug

3  addiction?

4      THE DEFENDANT:  No, Your Honor.

5      THE COURT:  Okay.  So let's talk about the

6  indictment.

7      You have been charged in this case by criminal

8  indictment with conspiracy to commit securities fraud.

9      Have you discussed the charges fully with your

10  attorney?

11      THE DEFENDANT:  Yes.

12      THE COURT:  And are you satisfied with the advice

13  given to you by your attorney, Mr. Beck?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Is your willingness to plead guilty

16  today the result of discussions that Mr. Beck has had with

17  the attorneys for the Government?

18      THE DEFENDANT:  Can you repeat that?

19      THE COURT:  Is your willingness to plead guilty

20  the result of discussions that your attorney had with the

21  attorneys for the Government?

22      THE DEFENDANT:  Yes, Your Honor.

23      THE COURT:  All right.  So let's go over the jury

24  trial elements that you'll be waiving by entering this plea

25  today.

6

1           Do you understand that you have a right to plead

2   not guilty, to go to trial, and at the trial, you would have

3   the right to counsel?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  You would have the right to see all

6   the witnesses and have them cross-examined.

7           THE DEFENDANT:  Yes.

8           THE COURT:  The right on your own part to decline

9   to testify unless you agreed to do so.

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  The right to issue subpoenas to compel

12   witnesses to testify in your defense.

13           THE DEFENDANT:  Yes.

14           THE COURT:  At trial, you would have the benefit

15   of the presumption of innocence.  That presumption would

16   carry until such time, if ever, that a unanimous jury was

17   satisfied that the Government proved your guilt beyond a

18   reasonable doubt.

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And that you have no duty to testify

21   at trial.

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  And at trial, you have no burden of

24   proving anything.  That rests with the Government to prove

25   each and every element of the crime charged beyond a

7

1    reasonable doubt.

2         THE DEFENDANT:  Yes.

3         THE COURT:  And do you understand that you have

4    the right to appointment of counsel for appeal if there is a

5    guilty verdict?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  And do you understand by entering a

8    plea today, you waive all those rights?

9         THE DEFENDANT:  Yes.

10         THE COURT:  Mr. Goldman, are you a U.S. citizen?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And just out of an abundance of

13    caution, do you understand that if you're not a citizen,

14    your guilty plea could result in your deportation from the

15    United States?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And you've discussed that with

18    Mr. Beck?

19         THE DEFENDANT:  Yes, I did.

20         THE COURT:  All right.  Let's look at the plea

21    bargain letter.  It's dated November 6th, 2019.

22         Mr. Beck, if you could show your client the

23    signature line.  It's on page six.

24         MR. BECK:  Yes, Your Honor.

25         THE COURT:  And did you have a chance to review

8

1   this agreement and read it and discuss it with your lawyer

2   before you signed it?

3            THE DEFENDANT:  Yes, I did.

4            THE COURT:  All right.

5            Can the Government summarize the plea?

6            MR. FONTECCHIO:  Absolutely.  Thank you, Your

7   Honor.

8            Under this plea dated November 6, as you

9   mentioned, Mr. Goldman will be pleading guilty to Count One

10  of the indictment, which charges Mr. Goldman with conspiracy

11  to commit securities fraud between in or about December 2013

12  and in or about June 2015, contrary to Title 15, U.S. Code,

13  sections 78j(b) and 78ff, and Title 17, Code of Federal

14  Regulations, sections 240.10b-5, in violation of 18 U.S.C.

15  section 371.

16           In exchange, our Office will not initiate any

17  further criminal charges against Mr. Goldman for his

18  involvement in a scheme to defraud investors of the Nonko

19  Trading Group.

20           Additionally, there is a restitution provision in

21  which Mr. Goldman agrees to make full restitution for

22  reasonably foreseeable losses.

23           There is a Schedule A with various stipulations,

24  including, most importantly, a stipulation that the

25  reasonable Guideline offense level here is a 17.

9

1          Finally, there's an appellate waiver under which

2     the Government will not appeal if Your Honor sentences

3     Mr. Goldman to a level 17 or above, and Mr. Goldman will not

4     appeal if Your Honor sentences him to a level 17 or below.

5          THE COURT:  All right.  Mr. Goldman, is that an

6     accurate summary of the plea bargain between you and the

7     Government?

8          THE DEFENDANT:  Yes, it is, Your Honor.

9          THE COURT:  And the letter is supposed to set out

10    all the bargains and benefits and things flowing to you in

11    exchange for your willingness to plead guilty.  Do you feel

12    that the plea bargain sets forth fully and comprehensively

13    and accurately all of the terms of the plea bargain?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Has anyone made any promises or

16    assurances to induce you or force you to plead guilty?

17         THE DEFENDANT:  No, they haven't.

18         THE COURT:  Are you pleading guilty of your own

19    free will?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  Do you understand that this is

22    a plea to a felony, that if it's accepted, you will be

23    adjudged guilty of a felony, and that may deprive you of the

24    right to vote, the right to hold office, the right to serve

25    on a jury, and the right to possess a firearm?

10

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  So, let's talk about the

3     maximum terms of imprisonment.

4          Again, you're pleading guilty to one count of

5     conspiracy to commit securities fraud, and the maximum

6     penalties is five years' imprisonment, a fine to the

7     greatest of $250,000 or twice the amount of any loss or

8     gain, all fines over $2,500 are subject to interest, and a

9     hundred-dollar special assessment.

10          The Court will also impose a term of supervised

11     release of not more than three years.  If you're on

12     supervised release and you violate, you can get an

13     additional two years' imprisonment.

14          And the Court can also order restitution.

15          Do you understand those penalties?

16          THE DEFENDANT:  Yes, I do, Your Honor.

17          THE COURT:  All right.  Let's talk about

18     sentencing.

19          You understand that the sentence to be imposed

20     upon you is within the discretion of the Court, subject to

21     the Sentencing Reform Act?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And that the judge will look at the

24     maximum and minimum I just went over, and -- the maximum in

25     our case; there's no minimum -- the maximum, as well as the

11

1     Sentencing Guidelines?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And that in fashioning a sentence, the

4     Court will consider the actual conduct, if there was a

5     victim, your role, if you obstructed justice, and if you

6     accepted responsibility?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you understand that the Court will

9     consider your criminal history, if any?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And that that these Guidelines are

12     advisory and not mandatory?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And that the sentence you receive may

15     be above the minimum and maximum sentence recommended by the

16     Guidelines, and the judge can impose any reasonable

17     sentence, up to the statutory maximum?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Have you discussed these with your

20     attorney?

21          THE DEFENDANT:  Yes, I have.

22          THE COURT:  And has your attorney made any clear

23     predictions or promises about the exact sentence that you

24     will receive?

25          THE DEFENDANT:  No, he hasn't.

12

1          THE COURT:  Do you understand until a presentence

2     report is completed, it would be impossible for me to know

3     what sentence to impose?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand that you will not be

6     able to withdraw your plea on the grounds that someone's

7     prediction was incorrect?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you understand that the

10    stipulations between you and the Government are not binding

11    on me if I'm persuaded that they are not accurate?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  All right.  Let's talk about what

14    happens on appeal.

15         Do you understand that in the absence of a waiver,

16    the law permits every defendant to file an appeal if you

17    believe there has been an error?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And that in the absence of a waiver,

20    you have a right, if you believe there has been an error, to

21    file a collateral challenge under 28 U.S.C. 2255.

22         THE DEFENDANT:  Yes.

23         THE COURT:  And as in your plea agreement, if I

24    impose a sentence that falls within or below Guideline range

25    17, you cannot appeal, file a 2255, or any other challenge

13

1    to your sentence?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And do you understand that your plea

4    only allows you to challenge your sentence if I impose a

5    sentence that is above the range applicable to offense level

6    17, or to challenge your criminal history category?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Did you discuss the effect of this

9    waiver with your attorney?

10             THE DEFENDANT:  Yes, I did.

11             THE COURT:  Are you satisfied with the explanation

12   that he gave you?

13             THE DEFENDANT:  Yes, I am.

14             THE COURT:  All right.  So, as we talked about

15   earlier, you're pleading guilty to one count of conspiracy

16   to commit securities fraud, and that crime has the following

17   elements, so if you were to go to trial, the Government

18   would have to prove the following.  First, they'd have to

19   prove the conspiracy as follows:  Two or more people agreed

20   to commit securities fraud as charged in Count One; that you

21   were a party to that agreement; that you joined the

22   agreement knowing of its objective, which was to commit

23   securities fraud and intending to join together with at

24   least one other alleged co-conspirator, that is, that you

25   and the co-conspirator shared a unity of purpose and the

14

1   intent to achieve a common goal; and, four, that at some

2   time during the existence of the agreement, at least one of

3   the members performed an overt act to further the objectives

4   of the agreement.

5           So, that's conspiracy.

6           For securities fraud, the Government would have to

7   prove that in connection with the purchase and sale of

8   securities that you did one of the following:  You employed

9   a device, scheme, or artifice to defraud; made an untrue

10  statement of material fact, or omitted to state a material

11  fact which made what was said, under the circumstances,

12  misleading; or engaged in an act, practice, or course of

13  business that operated, or would operate, as a fraud or

14  deceit upon a purchaser or a seller of a security; two, that

15  you knowingly used, or caused to be used, any means or

16  instruments of transportation or communication in interstate

17  commerce or the use of the mails in furtherance of the

18  fraudulent conduct; three, that you acted willfully,

19  knowingly, and with the intent to defraud.

20          Do you understand that?

21          THE DEFENDANT:  Yes, I do, Your Honor.

22          THE COURT:  Okay.

23          So, let's put the factual basis on the record.

24          MR. FONTECCHIO:  Thank you, Your Honor.

25          Mr. Goldman, between in or around December 2013

15

1    and in or around June 2015, did you agree with others to

2    participate in a scheme to defraud customers of Nonko

3    Trading, a purported day trading firm?

4            THE DEFENDANT:  Yes.

5            MR. FONTECCHIO:  Specifically, did your

6    co-conspirators solicit individuals to open day-trading

7    accounts with Nonko and to wire thousands of dollars to

8    Nonko for the purpose of funding those accounts?

9            THE DEFENDANT:  Yes.

10           MR. FONTECCHIO:  Was money taken from some of

11   those day traders, and did you use a portion of that money

12   for personal expenses or other unauthorized purposes, rather

13   than using it to fund securities trading accounts?

14           THE DEFENDANT:  Yes.

15           MR. FONTECCHIO:  And we'll call these individuals

16   "victim investors."

17           As part of the scheme, did your co-conspirators

18   give the victim investors access to simulator or demo

19   trading accounts that were not capable of processing live

20   orders to buy or sell securities?

21           THE DEFENDANT:  Yes.

22           MR. FONTECCHIO:  Did your co-conspirators falsely

23   represent to the victim investors that those simulator or

24   demo accounts were actually live trading accounts?

25           THE DEFENDANT:  Yes.

16

1        MR. FONTECCHIO:  Did you know about the false

2   representations to the victim investors, and did you and

3   your co-conspirators do this to cover up the theft of the

4   victim investors' account deposit money?

5        THE DEFENDANT:  Yes.

6        MR. FONTECCHIO:  In or around September 2014, did

7   your co-conspirators launch a new trading platform called

8   "Logix" through which you continued the scheme?

9        THE DEFENDANT:  Yes.

10       MR. FONTECCHIO:  Did your co-conspirators, in

11  fact, continue the scheme by soliciting new victim investors

12  to set up accounts on Logix or by transferring existing

13  victim investors to Logix?

14       THE DEFENDANT:  Yes.

15       MR. FONTECCHIO:  Did your co-conspirators place

16  the victim investors who set up accounts through Logix on

17  demo or simulator accounts, while portraying those accounts

18  as real trading accounts?

19       THE DEFENDANT:  Yes.

20       MR. FONTECCHIO:  Throughout the time period of the

21  scheme, did the victim investors send their account deposit

22  money to bank accounts outside of the United States?

23       THE DEFENDANT:  Yes.

24       MR. FONTECCHIO:  Did at least some of the victim

25  investors transfer funds to Nonko through interstate wires?

CHARLES P. McGUIRE, C.C.R.

17

1          THE DEFENDANT:  Yes.

2          MR. FONTECCHIO:  Was some of the money distributed

3      to you and your co-conspirators?

4          THE DEFENDANT:  Yes.

5          MR. FONTECCHIO:  Did the victim investors include

6      individuals inside and outside of the United States?

7          THE DEFENDANT:  Yes.

8          MR. FONTECCHIO:  Do you acknowledge that the

9      scheme involved more than 10 victim investors, and that a

10     substantial portion of the scheme was carried out from

11     outside of the United States?

12         THE DEFENDANT:  Yes.

13         MR. FONTECCHIO:  Was the approximate amount that

14     you, in your role in the scheme, and your co-conspirators

15     stole from the victim investors between $250,000 and

16     $550,000?

17         THE DEFENDANT:  Yes.

18         MR. FONTECCHIO:  In committing all of the above

19     acts, did you act knowingly, intentionally, and willfully?

20         THE DEFENDANT:  Yes.

21         MR. FONTECCHIO:  Are you pleading guilty today

22     because you are, in fact, guilty of the crime charged in

23     Count One of the indictment; that is, conspiracy to commit

24     securities fraud?

25         THE DEFENDANT:  Yes.

18

1      MR. FONTECCHIO:  And do you have any additional

2  information about this conspiracy and the conduct of your

3  co-conspirators that you could provide if asked to do so?

4      THE DEFENDANT:  Yes.

5      MR. FONTECCHIO:  Your Honor, the Government

6  represents to the Court that, had this case proceeded to

7  trial, the Government would have been prepared to prove to a

8  jury beyond a reasonable doubt all of the essential elements

9  of the charge set forth in Count One of the indictment.

10      Specifically, the Government would be prepared to

11  prove beyond a reasonable doubt at trial that the Defendant

12  Mr. Goldman and his co-conspirators used the means and

13  instrumentalities of interstate commerce in furtherance of

14  the securities fraud conspiracy, and the Government would do

15  this through, among other things, witness testimony and

16  various financial records.

17      Coupled with these representations, the Government

18  believes that the Defendant Mr. Goldman's responses to the

19  questions above will provide a sufficient factual basis for

20  his guilty plea.

21      THE COURT:  All right.

22      It is the finding of this Court in the matter of

23  United States v. Goldman that Mr. Goldman is fully competent

24  and capable of entering an informed plea; he is aware of the

25  nature of the charges and the consequences of the plea; the

19

1   plea of guilty is knowing and voluntary, supported by an

2   independent basis in fact containing each element of the

3   offense.

4           The plea is therefore accepted, and the Defendant

5   is now adjudged guilty of the offense.

6           Mr. Goldman, there will be a written presentence

7   report prepared by a Probation Officer to assist me in

8   sentencing.  You will be asked to give information.

9           You and your attorney, Mr. Beck, will have the

10  opportunity to read the report and object to anything in it.

11          And there will be a hearing on February 26th at 11

12  a.m., and the Government will speak, Mr. Beck will certainly

13  speak, and you can speak if you choose.  You don't have to

14  speak; it's up to you.  You can also send me anything in

15  advance, if you'd like, or also from your family that you'd

16  like me to review before the sentencing hearing.  Okay?

17          All right.  Any other questions?  Any issues?

18          THE DEFENDANT:  No, Your Honor.

19          MR. BECK:  No, Your Honor.

20          THE COURT:  Thank you.  That was pretty quick.

21          MR. FONTECCHIO:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          THE COURT CLERK:  All rise.

24          (Matter concluded)

25

CHARLES P. McGUIRE, C.C.R.

20

Pursuant to Section 753, Title 28, United States Code, the following transcript is certified to be an accurate record as taken stenographically in the above entitled proceedings.

_____

s/CHARLES P. McGUIRE, C.C.R.

CHARLES P. McGUIRE, C.C.R.

EXHIBIT B



**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*970 Broad Street*                          *Direct Dial: (973) 645-2915*
*Newark, New Jersey 07102*

November 6, 2019

Matthew Evan Beck, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052

               Re:  Plea Agreement with JEFFREY GOLDMAN

Dear Mr. Beck:

     This letter sets forth the plea agreement between your client, JEFFREY GOLDMAN ("GOLDMAN"), and the United States Attorney for the District of New Jersey ("this Office").

<u>Charge</u>

     Conditioned on the understandings specified below, this Office will accept a guilty plea from GOLDMAN to Count One of the Indictment (Dkt. No. 1, Crim No. 18-516), which charges GOLDMAN with conspiracy to commit securities fraud between in or about December 2013 and in or about June 2015, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, in violation of 18 U.S.C. § 371.  If GOLDMAN enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against GOLDMAN for his involvement in a scheme to defraud investors of Nonko Trading ("Nonko"), an online day-trading firm, by misappropriating funds that those investors transferred to Nonko to fund securities trading accounts, and will move to dismiss Count Two of the Indictment (Dkt. No. 1, Crim No. 18-516) at the time of sentencing.  However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, GOLDMAN agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by GOLDMAN may be commenced against him, notwithstanding the expiration of the limitations period after GOLDMAN signs the agreement.

Sentencing

The violation of 18 U.S.C. § 371 to which GOLDMAN agrees to plead guilty carries a statutory maximum prison sentence of 5 years and a statutory maximum fine equal to the greatest of: (1) $250,000; or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon GOLDMAN is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence GOLDMAN ultimately will receive.

Further, in addition to imposing any other penalty on GOLDMAN, the sentencing judge: (1) will order GOLDMAN to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing; (2) must order GOLDMAN to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*; (3) may order GOLDMAN, pursuant to 18 U.S.C. § 3555, to give notice to any victims of his offense; and (4) pursuant to 18 U.S.C. § 3583, may require GOLDMAN to serve a term of supervised release of not more than three years, which will begin at the expiration of any term of imprisonment imposed. Should GOLDMAN be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, GOLDMAN may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

In addition, GOLDMAN agrees to make full restitution for all reasonably foreseeable losses resulting from the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense, to victims of the scheme as will be identified prior to or at the time of sentencing.

<u>Rights of This Office Regarding Sentencing</u>

Except as otherwise provided in this agreement, this Office reserves its right to take any position with respect to the appropriate sentence to be imposed on GOLDMAN by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of GOLDMAN's activities and relevant conduct with respect to this case.

<u>Stipulations</u>

This Office and GOLDMAN agree to stipulate at sentencing to the statements set forth in the attached Schedule A, which hereby is made a part of this plea agreement. This agreement to stipulate, however, cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties. To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence. Moreover, this agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached Schedule A, this Office shall not be bound by any such stipulation. A determination that any stipulation is not binding shall not release either this Office or GOLDMAN from any other portion of this agreement, including any other stipulation. If the sentencing court rejects a stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court was within its discretion and authority to do so. These stipulations do not restrict this Office's right to respond to questions from the Court and to correct misinformation that has been provided to the Court.

<u>Waiver of Appeal and Post-Sentencing Rights</u>

As set forth in Schedule A, this Office and GOLDMAN waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

Immigration Consequences

GOLDMAN understands that, if he is not a citizen of the United States, his guilty plea to the charged offense may result in his being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. GOLDMAN understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. GOLDMAN understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, GOLDMAN waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against GOLDMAN. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service or the Securities and Exchange Commission), or any third party from initiating or prosecuting any civil or administrative proceeding against GOLDMAN.

No provision of this agreement shall preclude GOLDMAN from pursuing in an appropriate forum, when permitted by law, an appeal, collateral attack, writ, or motion claiming that GOLDMAN received constitutionally ineffective assistance of counsel.

4

<u>No Other Promises</u>

This agreement constitutes the plea agreement between GOLDMAN and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

CRAIG CARPENITO
United States Attorney

By: Ari B. Fontecchio
Nicholas P. Grippo
Assistant U.S. Attorneys

APPROVED:

Daniel Shapiro
Chief, Economic Crimes Unit

5

I have received this letter from my attorney, Matthew Evan Beck, Esq. I have read it. My attorney and I have discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations, waiver, and immigration consequences. I understand this letter fully. I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____          Date: Nov 6, 2019
JEFFREY GOLDMAN

I have discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations, waiver, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____          Date: Nov 6, 2019
MATTHEW EVAN BECK, Esq.

Plea Agreement With JEFFREY GOLDMAN

Schedule A

This Office and GOLDMAN recognize that the United States Sentencing Guidelines are not binding upon the Court. This Office and GOLDMAN nevertheless agree to the stipulations set forth herein, and agree that the Court should sentence GOLDMAN within the Guidelines range that results from the total Guidelines offense level set forth below. This Office and GOLDMAN further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level.

1) The version of the United States Sentencing Guidelines effective November 1, 2018 applies in this case. The applicable guideline for the violation of 18 U.S.C. § 371 is U.S.S.G. § 2B1.1. Pursuant to U.S.S.G. § 2B1.1(a)(2), because this agreement relates to an offense referenced in U.S.S.G. § 2B1.1, and the offense carries a statutory maximum sentence of 5 years, the Base Offense Level is 6.

2) Specific Offense Characteristic U.S.S.G. § 2B1.1(b)(1)(G) applies because the reasonably foreseeable loss resulting from the offense was between $250,000 and $550,000. This Specific Offense Characteristic results in an increase of 12 levels.

3) Specific Offense Characteristic U.S.S.G. § 2B1.1(b)(2)(A) applies because the offense involved 10 or more victims. This Specific Offense Characteristic results in an increase of 2 levels.

4) Specific Offense Characteristic U.S.S.G. § 2B1.1(b)(10)(B) applies because a substantial part of the fraudulent scheme was committed from outside the United States. This Specific Offense Characteristic results in an increase of 2 levels.

5) GOLDMAN was a minor participant in the criminal activity under U.S.S.G. § 3B1.2(b). GOLDMAN's status as a minor participant results in a decrease of 2 levels.

6) As of the date of this letter, GOLDMAN has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for GOLDMAN's acceptance of responsibility is appropriate if GOLDMAN's acceptance of responsibility continues through the date of sentencing. See U.S.S.G. § 3E1.1(a).

7)     As of the date of this letter, GOLDMAN has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in GOLDMAN's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) GOLDMAN enters a plea pursuant to this agreement, (b) this Office in its discretion determines that GOLDMAN's acceptance of responsibility has continued through the date of sentencing and GOLDMAN therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) GOLDMAN's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

8)     In accordance with the above, the parties agree that the total Guidelines offense level applicable to GOLDMAN is 17 (the "agreed total Guidelines offense level").

9)     The parties agree not to seek or argue for any upward or downward departure, adjustment, or variance not set forth herein.  The parties further agree that a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 17 is reasonable.

10)     GOLDMAN knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 17. This Office will not file any appeal, motion or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from a total Guidelines offense level of 17. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category.  The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

11)     Both parties reserve the right to oppose or move to dismiss any appeal, collateral attack, writ, or motion barred by the preceding paragraph and to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph.